EILEEN T. GALLAGHER, J.:
 

 {¶ 1} Defendant-appellant/cross-appellee, city of Cleveland ("the City"), appeals from the judgment of the common pleas court granting summary judgment in favor of plaintiff-appellee/cross-appellant, David Ayers ("Ayers"), on his claim for indemnification pursuant to R.C. 2744.07(A)(2). The City raises the following assignment of error for review:
 

 1. The trial court erred as a matter of law when it granted Plaintiff's motion for summary judgment and denied Defendant's motion for summary judgment seeking dismissal of Plaintiff's claim for indemnification under R.C. 2744.07(A)(2) which limits standing to assert such claims to employees of political subdivisions. The court further erred in failing to grant summary judgment to Defendant because the underlying debts of the police officers to Plaintiff had been extinguished and there was no debt for the City to indemnify.
 

 {¶ 2} In his cross-appeal, Ayers raises the following assignments of error:
 

 1. The trial court erroneously omitted the $390,000 award of attorney fees and costs in the underlying civil rights case.
 

 2. Plaintiff is entitled to statutory interest on the Ayers judgment.
 

 {¶ 3} After careful review of the record and relevant case law, we reverse the trial court's judgment granting summary judgment in favor of Ayers and remand for proceedings consistent with this opinion. We further find Ayers's cross-appeal to be moot based on our resolution of the City's appeal.
 

 I. Procedural History
 

 A. Underlying Criminal Case
 

 {¶ 4} In December 2000, Ayers was convicted of aggravated murder, aggravated burglary, and aggravated robbery. The convictions stemmed from the murder and robbery of seventy-six year old victim, Dorothy Brown.
 
 [1]
 
 Ayers was sentenced to a term of 20 years to life on the aggravated murder count, ten years on the aggravated burglary count, and ten years on the aggravated robbery count. Each term was ordered to be served consecutively.
 

 {¶ 5} On September 12, 2002, this court affirmed Ayers's convictions but reversed his sentence and remanded for resentencing.
 
 State v. Ayers
 
 , 8th Dist. Cuyahoga No. 79134,
 
 2002-Ohio-4773
 
 ,
 
 2002 WL 31031675
 
 . On remand, Ayers was again sentenced to life in prison. The Ohio Supreme Court denied leave to appeal with one justice dissenting.
 
 State v. Ayers
 
 ,
 
 98 Ohio St.3d 1424
 
 ,
 
 2003-Ohio-259
 
 ,
 
 782 N.E.2d 78
 
 (Pfeiffer, J., dissenting).
 

 {¶ 6} In January 2004, Ayers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 with the United States District Court for the Northern District of Ohio, Eastern Division. The petition raised the following grounds for relief (1) the prosecutor willfully withheld exculpatory evidence from the defense; (2) the prosecutor engaged in misconduct by withholding incriminating evidence, making improper remarks in his closing argument, and extracting a jailhouse confession from Ayers on the eve of trial; (3) Ayers's Sixth Amendment right to counsel was violated when the jailhouse informant, acting as a state agent, obtained the confession; and (4) the evidence was insufficient to sustain the convictions. On September 27, 2007, the district court denied Ayers's petition.
 
 Ayers v. Bradshaw
 
 , N.D.Ohio No. 1:04CV0133,
 
 2007 WL 2840399
 
 (Sept. 27, 2007).
 

 {¶ 7} On appeal, the United States Court of Appeals for the Sixth Circuit reversed the decision of the district court and remanded the case with instructions for the district court to grant a conditional writ of habeas corpus, giving the state of Ohio 180 days within which to provide Ayers a new trial or, failing that, to release him. The Sixth Circuit stated, in pertinent part:
 

 Because the State "intentionally creat[ed] a situation likely to induce [Ayers] to make incriminating statements without the assistance of counsel," * * * we hold that Ayers's Sixth Amendment right to counsel was violated, and that the Ohio Court of Appeals unreasonably ruled to the contrary.
 

 Ayers v. Hudson
 
 ,
 
 623 F.3d 301
 
 (6th Cir.2010).
 

 {¶ 8} Following the Sixth Circuit's judgment, the state chose not to pursue a new trial against Ayers. Ayers was released from prison on September 12, 2011.
 

 B. Federal Court Complaint
 

 {¶ 9} On March 27, 2012, Ayers filed a complaint in the district court, alleging federal and state law claims against Detectives Michael Cipo ("Cipo"), Denise Kovach
 ("Kovach"), and the City (collectively "the defendants"). On July 20, 2012, Ayers filed an amended complaint, raising causes of action for violations of due process, malicious prosecution, interference with the right to counsel, failure to intervene, civil conspiracy, intentional misrepresentation, intentional infliction of emotional distress, negligent supervision, respondeat superior, and indemnification under R.C. 2744.07(A)(2). The complaint alleged that Cipo and Kovach violated Ayers's Sixth Amendment right to counsel by using jail informant Donald Hutchinson to unlawfully interrogate Ayers. In addition, Ayers alleged that Cipo and Kovach fabricated evidence and perjured themselves in an effort to convict Ayers.
 

 {¶ 10} The defendants moved to dismiss, or in the alternative, for summary judgment. On February 25, 2013, the district court granted summary judgment in favor of the City, dismissing all claims raised against the City. With respect to Ayers's cause of action for indemnification against the City, the district court found that the claim was premature, stating:
 

 The duty to indemnify accrues upon issuance of a judgment against the employee for compensatory damages caused by an act or omission in connection with a governmental function. Should the political subdivision fail to uphold its duty, the statute outlines a mechanism for Ohio courts to consider the employee's claims and to "order the political subdivision to defend the employee in the action." Therefore, the indemnification claim does not survive.
 

 Ayers
 
 , N.D.Ohio No. 1:12-CV-753,
 
 2013 WL 775359
 
 , at *16 (Feb. 25, 2013).
 

 {¶ 11} In March 2013, the matter proceeded to a jury trial against Cipo and Kovach on Ayers's remaining claims for violation of due process, malicious prosecution (both federal and state), interference with the right to counsel, conspiracy, and intentional infliction of emotional distress. At the conclusion of trial, a jury returned a verdict in favor of Ayers, and the trial court entered judgment against the detectives in the amount of $13,210,000. On May 9, 2013, the judgment was enlarged to include an additional $390,000 in costs and attorneys fees.
 
 [2]
 

 {¶ 12} After the civil judgment was entered against Cipo and Kovach, the City's Chief Assistant Director of Law, Joseph Scott ("defendant Scott"), on behalf of the detectives, offered to assign to Ayers any indemnification claims that the detectives might have had against the City in exchange for an agreement by Ayers to forebear collection efforts against them personally.
 
 See
 
 City's exhibit No. 1, First Set of Admissions, No. 5. In a letter dated March 27, 2013, Ayers, through counsel, rejected the offer. Ayers subsequently rejected a similar offer to assign the detectives' indemnification rights in May 2013.
 

 C. Ayers Attempts to Reinstate his Indemnification Claim in the District Court
 

 {¶ 13} Following the entry of judgment against the detectives, the City did not indemnify Cipo or Kovach pursuant to R.C. 2744.07(A)(2). In addition, neither Cipo or Kovach sought to enforce their right to indemnification under the statute, or filed a grievance against the City pursuant to the procedure set forth in the parties' Collective Bargaining Agreement ("CBA").
 
 See
 
 Article XXII of the CBA, pp. 41-44. Instead, the City entered into an agreement with bankruptcy counsel, David M. Leneghan ("defendant Leneghan"), on April 24, 2013, "to assist [Cipo and Kovach] with personal, individual bankruptcy
 proceedings" in an effort to secure the discharge of their debt.
 

 {¶ 14} Cipo passed away on July 9, 2013.
 
 [3]
 
 On July 29, 2013, Leneghan filed a petition for Chapter 7 bankruptcy on Kovach's behalf. The petition listed Ayers as a creditor and the $13,210,000 judgment as a debt. In the course of discovery in this matter, Leneghan admitted "that at some point between March 8, 2013 and July 29, 2013, Joseph Scott communicated to [him] that language in the [CBA] limited Cleveland's obligation to indemnify Kovach for the Ayers Judgment to $1 million." Ayers exhibit No. 33, Leneghan's Response to Plaintiff's Request for Admissions, No. 9. On November 12, 2013, the bankruptcy court discharged Kovach's personal liability for the $13,210,000 judgment debt.
 

 {¶ 15} Following the bankruptcy proceedings, Ayers filed a motion with the district court to reinstate his state law indemnification claim against the City. On May 6, 2014, the district court granted Ayers's motion to reinstate the claim. However, on July 11, 2014, the district court vacated its May 6, 2014 order and dismissed Ayers's state law indemnification claim for lack of subject matter jurisdiction. In its opinion, the court declined to exercise supplemental jurisdiction, stating:
 

 Plaintiff Ayers's indemnification claim is a state law claim. It does not arise out of any federal statutes and it does not relate to the violation of any federal rights. Further, the parties to this case are not diverse. Thus, the district court does not have original jurisdiction over this claim.
 

 * * *
 

 After considering these factors, the Court declines to exercise supplemental jurisdiction. The state courts are best suited to decide whether a plaintiff rather than an employee can bring a direct action for indemnification under claim Ohio Revised Code § 2744.07(A) and whether the City of Cleveland's collective bargaining agreement's $1 million cap on indemnification is compatible with Ohio law.
 

 Ayers v. Cleveland
 
 , N.D.Ohio No. 1:12-CV-753,
 
 2014 WL 3449419
 
 , at *1-2 (July 11, 2014).
 

 {¶ 16} On November 5, 2014, Ayers moved the bankruptcy court to reopen Kovach's bankruptcy proceeding "for the limited purpose of clarifying the applicability of the discharge injunction in connection with the pursuit of indemnification proceeds against [the City]." The motion was granted on December 10, 2014. On February 19, 2015, the bankruptcy court issued an order, stating, in relevant part:
 

 IT IS HEREBY ORDERED, that it will not be a violation of the discharge injunction if David Ayers pursues a state court action against the Debtor's name only and only against the amount of indemnification, if any, which may be available against Debtor's former employer, the City of Cleveland. The permanent injunction is hereby modified for cause as set forth herein.
 

 D. Ayers's Indemnification Claim Against the City in the Common Pleas Court
 

 {¶ 17} On June 8, 2015, Ayers filed the present action against the City and defendants Scott and Leneghan in the court of common pleas. The complaint asserted various causes of action against the City, including claims for statutory indemnification pursuant to R.C. 2744.07(A)(2), tortious interference, breach of contract, aiding and abetting, abuse of process, unjust enrichment, specific performance, and civil
 conspiracy. The complaint further alleged causes of action against defendants Scott and Leneghan for tortious interference, aiding and abetting, abuse of process, and civil conspiracy.
 

 {¶ 18} On November 5, 2015, the trial court granted defendant Leneghan's motion to dismiss the abuse of process claims levied against him, but denied his request to dismiss the remaining claims of tortious interference, conspiracy, and aiding and abetting.
 

 {¶ 19} Following discovery, the parties agreed to address the threshold question of whether Ayers is entitled to seek indemnification from the City pursuant to R.C. 2744.07(A)(2). On August 9, 2016, Ayers filed a motion for partial summary judgment on the limited issue of whether R.C. 2744.07(A)(2) affords Ayers relief. On the same day, the City and defendant Scott filed a joint motion for partial summary judgment, arguing that Ayers lacked standing to bring an indemnification claim against the City under R.C. 2744.07(A)(2).
 

 {¶ 20} On October 12, 2016, the trial court granted Ayers's motion for partial summary judgment on the issue of indemnification and denied the City and defendant Scott's motion for summary judgment. The court determined that "the right to indemnification attached upon the final judgment in the federal case and Ayers has the right to proceed directly against [the City] to recover the judgment." Accordingly, the trial court entered judgment against the City in the amount of $13,210,000 on the statutory indemnification claim and dismissed all other claims levied against the City and defendants as moot.
 

 {¶ 21} The City now appeals from the trial court's judgment granting summary judgment in favor of Ayers. In addition, Ayers cross-appeals the trial court's failure to include an award of attorney fees, costs, and statutory interest in its October 12, 2016 judgment.
 

 II. Law and Analysis
 

 {¶ 22} In its sole assignment of error, the City argues the trial court erred by granting summary judgment in favor of Ayers on his statutory indemnification claim under R.C. 2744.07(A)(2).
 

 {¶ 23} We review the grant of summary judgment de novo using the standard set forth in Civ.R. 56.
 
 Argabrite v. Neer
 
 ,
 
 149 Ohio St.3d 349
 
 ,
 
 2016-Ohio-8374
 
 ,
 
 75 N.E.3d 161
 
 , ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party."
 

 Id.
 

 {¶ 24} R.C. Chapter 2744 governs political subdivision tort liability. In this case, Ayers sought summary judgment under R.C. 2744.07(A)(2) to compel the City to indemnify Kovach for the full amount of the federal court judgment rendered against Kovach, plus interest. On appeal, the parties dispute whether R.C. 2744.07(A)(2) provides creditors with standing to enforce the statute, as the trial court found, or whether R.C. 2744.07(A)(2)"only creates a cause of action for employees of political subdivisions," as the City contends.
 

 {¶ 25} R.C. 2744.07(A)(2) provides:
 

 Except as otherwise provided in this division, a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for
 injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of his employment or official responsibilities.
 

 The parties' CBA contains a similar provision at Article XXVIII, ¶ 62.
 

 {¶ 26} On its face, we agree with the trial court that "the plain reading of [ R.C. 2744.07(A)(2) ] is to indemnify an employee of a political subdivision against whom a judgment is rendered arising from an act or failure to act in the course of employment while acting in good faith." The statute does not provide a procedure for obtaining indemnification and suggests that the political subdivision's duty to indemnify and hold harmless attaches immediately upon the issuance of the judgment against the employee.
 
 See
 

 Paolisso v. Edison Local Bd. of Edn.
 
 , 7th Dist. Jefferson No. 90-J-36,
 
 1992 WL 19829
 
 , *4 (Feb. 5, 1992) ("In accordance with the plain meaning of the statute, it logically follows that the duty to indemnify and hold harmless arises at the time judgment is entered.").
 

 {¶ 27} In this case, the City did not indemnify Kovach or Cipo. Moreover, the City has provided no evidence to suggest the detectives were not entitled to indemnification pursuant to the conditions set forth in the statute. As stated by the trial court, the City, throughout the federal proceeding, "took the position that [the detectives'] alleged acts were done in good faith and within the scope of the detectives' employment and official duties." Thus, it appears that the City did, in fact, fail to satisfy its statutory obligation to hold its employees harmless under R.C. 2744.07(A)(2). To be clear, however, the City's obligations under R.C. 2744.07(A)(2) are owed to Cipo and Kovach. As such, it is their rights, as City employees, that were infringed upon by the City's failure to comply with the statute. However, Cipo and Kovach are not parties to this case and this court has no authority to remedy the shortfalls of the City's dealings with its employees.
 

 {¶ 28} Here, the limited question before this court is whether Ayers, as a judgment creditor, has standing to bring a private cause of action against the City to enforce the City's obligations to Kovach and Cipo under R.C. 2744.07(A)(2). We find he does not.
 

 {¶ 29} The doctrine of standing requires a litigant to be in the proper position to assert a claim, and the party's inquiry must be within the zone of interest intended to be protected or regulated by the statute.
 
 Taylor v. Academy Iron & Metal Co.
 
 ,
 
 36 Ohio St.3d 149
 
 , 152,
 
 522 N.E.2d 464
 
 (1988). In establishing the state's entire administrative and regulatory scheme, the legislature expressly authorizes and designates the authority to enforce particular regulations and statutes to certain persons and agencies.
 
 New Boston Coke Corp. v. Tyler
 
 ,
 
 32 Ohio St.3d 216
 
 , 218,
 
 513 N.E.2d 302
 
 (1987). It is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another.
 
 Crull v. Maple Park Body Shop
 
 ,
 
 36 Ohio App.3d 153
 
 ,
 
 521 N.E.2d 1099
 
 (12th Dist.1987).
 

 {¶ 30} In determining whether statutes may create a private cause of action for enforcement, the Ohio Supreme Court has held that a "statutory policy" may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio Legislature.
 
 Fawcett v. G. C. Murphy & Co.
 
 ,
 
 46 Ohio St.2d 245
 
 , 249,
 
 348 N.E.2d 144
 
 (1976). Ohio courts apply a three-part test adopted from
 
 Cort v. Ash
 
 ,
 
 422 U.S. 66
 
 ,
 
 95 S.Ct. 2080
 
 ,
 
 45 L.Ed.2d 26
 
 (1975), for determining when a private cause of action arises by implication under a particular statute. The three prongs of the test ask (1) are the plaintiffs in a class for whose special benefit the statute was enacted; (2) is there any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action; and (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiffs?
 
 Strack v. Westfield Cos.
 
 ,
 
 33 Ohio App.3d 336
 
 , 337,
 
 515 N.E.2d 1005
 
 (9th Dist.1986) ;
 
 Elwert v. Pilot Life Ins. Co.
 
 ,
 
 77 Ohio App.3d 529
 
 ,
 
 602 N.E.2d 1219
 
 (1st Dist.1991).
 

 {¶ 31} After careful review, we find Ayers cannot satisfy the foregoing criteria, because (1) his asserted claims are not within the zone of interest intended to be protected or regulated by R.C. 2744.07(A)(2), and (2) a private cause of action by a judgment creditor does not arise by implication under R.C. 2744.07(A)(2). In our view, the purpose of R.C. 2744.07(A)(2) is not to benefit third parties who have been injured by the acts of a state employee, but rather, to shield the employee from financial ruin resulting from an act committed in good faith and within the scope of employment. As referenced by Ayers in his appellate brief, the drafters' intent in constructing R.C. 2744.07(A)(2) was to "insulate Teflon-coated employees from liability." Thus, the explicit purpose of the statute is to protect municipal employees; not to provide an avenue for creditors to collect a monetary judgment from a political subdivision.
 

 {¶ 32} In addition, we decline to adopt Ayers's position that R.C. 2744.07(A)(2) has a "secondary purpose of ensuring that members of the public harmed by public employees' tortious conduct will be made whole." While making a plaintiff-creditor "whole" may be incidental to the protections afforded to employees under R.C. 2744.07(A)(2), the language of the statute in no way suggests that it was enacted to protect the interests of judgment creditors.
 
 See
 

 Click v. Springfield
 
 , 2d Dist. Clark No. CA 2342,
 
 1988 WL 28105
 
 (Mar. 4, 1988) (stating that the sole legislative intent of R.C. 2744.07 is to hold employees harmless from any potential liability). If, for example, R.C. 2744.07(A)(2) was created to benefit third parties, the statute would extend its protections to all acts committed by employees of the political subdivision in the course of their employment, and not just those committed in good faith.
 

 {¶ 33} Accordingly, we find R.C. 2744.07(A)(2) does not provide Ayers with a private cause of action against the City to enforce its statutory obligation to indemnify its employees. Regardless of this court's disfavor with the City's conduct in this matter, Ayers lacked legal standing to pursue a claim for indemnification under R.C. 2744.07(A)(2) and providing him with a remedy under the statute would be inconsistent with its underlying purpose.
 

 {¶ 34} The dissent suggests that our holding creates an "unrecognized and unintended exception to the law" by finding "that political subdivisions will not be obligated to indemnify judgments against its employee pursuant to R.C. 2744.07." To be clear, that is not the holding of this court. In fact, it is the exact opposite. As stated, the clear language of the statute obligates the political subdivision to indemnify an employee in the amount of any judgment "immediately upon the issuance of the judgment against the employee" if the conditions of R.C. 2744.07(A)(2) are met.
 
 See
 
 ¶ 26,
 
 supra
 
 . However, when the political subdivision fails or declines to comply with that obligation, only the employee has standing to enforce its rights under R.C. 2744.07(A)(2), not a third-party creditor. To the extent a third-party creditor
 believes the political subdivision's conduct was inappropriate, it may pursue legal action against the political subdivision on other grounds, as Ayers has in this case.
 

 {¶ 35} We further note that Ayers has not argued, or otherwise set forth a basis for this court to conclude, that he shared a sufficient relationship with the nonparty detectives such that he had third-party standing to pursue this action.
 
 See
 

 N. Canton v. Canton
 
 ,
 
 114 Ohio St.3d 253
 
 ,
 
 2007-Ohio-4005
 
 ,
 
 871 N.E.2d 586
 
 , ¶ 14. (To have standing, the general rule is that "a litigant must assert its own rights, not the claims of third parties."). Any benefit Ayers claims under R.C. 2744.07(A)(2) is merely incidental to the statutory rights afforded to the detectives under the statute.
 

 {¶ 36} Consistent with our statutory interpretation, Ohio courts analyzing R.C. 2744.07(A)(2) have overwhelmingly held that the statute does not create a private cause of action for judgment creditors. In
 
 Piro v. Franklin Twp.
 
 ,
 
 102 Ohio App.3d 130
 
 , 141,
 
 656 N.E.2d 1035
 
 (9th Dist.1995), the Ninth District held that R.C. 2744.07(A)(2) does not remove a political subdivision's immunity; rather, it obligates the political subdivision to indemnify its employees if they are found liable for a good faith act that is related to a governmental or proprietary function.
 

 Id.
 

 The
 
 Piro
 
 court emphasized that "requiring the subdivision to indemnify its employees is entirely different from imposing direct liability on the subdivision."
 

 Id.
 

 {¶ 37} In his complaint, Ayers did not allege that the City was directly liable for the acts of its employees. Rather, Ayers argued that he "has legal standing
 
 to enforce his judgment
 
 against the City as a judgment creditor." (Emphasis added.) However, " R.C. 2744.07(A)(2) creates a statutory obligation to indemnify
 
 rather than a means to enforce a judgment
 
 ." (Emphasis added.)
 
 Stengel v. Columbus
 
 ,
 
 74 Ohio App.3d 608
 
 , 612,
 
 600 N.E.2d 248
 
 (10th Dist.1991). Thus, Ayers cannot invoke R.C. 2744.07(A)(2) to collect a judgment rendered against Cipo and Kovach. Rather, it is the detectives, alone, who have standing to enforce their statutory right to indemnification. If, as here, the employee does not seek to remedy the political subdivision's failure to indemnify, the judgment creditor is left to satisfy its judgment from the employee-i.e., the liable party.
 

 {¶ 38} Federal courts have reached similar conclusions. In an analogous case involving an indemnification cause of action brought against the city of Cleveland by wrongfully imprisoned plaintiffs, the United States District Court for the Northern District of Ohio held that "the right of indemnification [under R.C. 2744.07(A)(2) ] is the right of the employee; it does not create a cause of action or any enforceable right against the city in favor of a plaintiff who sues a municipal employee."
 
 Ajamu v. Cleveland
 
 , N.D.Ohio No. 1:12CV1320,
 
 2016 WL 4013596
 
 , at *2 (July 27, 2016), citing
 
 Maruschak v Cleveland
 
 , N.D.Ohio No. 1:09 CV 1680,
 
 2010 WL 2232669
 
 , at *6, fn. 8 (May 28, 2010).
 
 See also
 

 Shoup v. Doyle
 
 ,
 
 974 F.Supp.2d 1058
 
 (S.D.Ohio 2013) (" R.C. 2744.07(A)(2) does not provide Shoup with a cause of action against the City or anyone; it imposes a duty on the City to defend its employees from her claims.").
 

 {¶ 39} In an effort to avoid the implications of the foregoing precedent, the trial court attempted to distinguish the cases on grounds that they involved motions to dismiss that were raised prior to a final judgment against an employee of the political subdivision. We are not persuaded by the trial court's suggestion that R.C. 2744.07(A)(2) provides Ayers with standing to pursue a cause of action against the City, in contravention of the holdings
 in
 
 Ajamu
 
 ,
 
 Maruschak
 
 , and
 
 Shoup
 
 , merely because this case involves a post-judgment complaint for indemnification. In our view, the federal court's interpretation of R.C. 2744.07(A)(2), and the restrictions placed on those who are entitled to enforce the statute apply equally to the procedural and factual circumstances presented in this case. Ayers's inability to establish his standing to pursue a private cause of action under R.C. 2744.07(A)(2) is not predicated on the procedural timing of the allegation, but is based on the express language and legislative intent of the statute.
 

 {¶ 40} Further, we are equally unpersuaded by the case law relied on by the trial court in its decision granting summary judgment in favor of Ayers. The trial court correctly noted that the United States District Court for the Northern District of Ohio has permitted a similar indemnification cause of action to proceed against a political subdivision. In
 
 Vaughan v. Shaker Hts.,
 
 N.D.Ohio No. 1:10CV0609,
 
 2011 WL 5966732
 
 (Nov. 28, 2011),
 
 aff'd in part, rev'd in part
 
 ,
 
 514 Fed.Appx. 611
 
 (6th Cir. 2013), the plaintiff sought to hold the city of Shaker Heights liable for the compensatory damages resulting from the actions of a Shaker Heights Police detective committed within the scope of his employment. Ultimately, the
 
 Vaughan
 
 court denied the city's motion to dismiss the plaintiff's indemnification claim against the City, stating that R.C. 2744.07(A)(2)"requires the City of Shaker Heights to indemnify [the detective]'s conduct for compensatory damages if that conduct was carried out in good faith within the scope of his employment."
 
 Id.
 
 at *14.
 

 {¶ 41} After careful consideration, we decline to follow
 
 Vaughan
 
 . While
 
 Vaughan
 
 certainly supports Ayers's position, it is evident that the holding in
 
 Vaughan
 
 is an outlier and its precedential value is minimal given the federal court's more recent holding in
 
 Ajamu
 
 .
 

 {¶ 42} We find the trial court's reliance on
 
 Memphis v. Roberts,
 

 528 S.W.2d 201
 
 (Tenn.1975), to be equally unpersuasive. In
 
 Memphis
 
 , the appellant-city sought review of a judgment of the trial court in favor of the employee-fireman in his action to compel the city to indemnify him and pay judgments entered against him for damages arising out of his performance of his official duties.
 
 [4]
 
 Thus,
 
 Memphis
 
 involves an employee's proper attempt to enforce the political subdivision's obligation to indemnify him and does not address the issue of whether a judgment creditor has standing to pursue such an action. The
 
 Memphis
 
 case only addressed the issue of whether an employee is required to satisfy the judgment rendered against him as a condition precedent to indemnity by the city-an issue not presently before this court. Accordingly, the trial court's reliance on
 
 Memphis
 
 is factually and legally misplaced.
 

 {¶ 43} Based on the foregoing, and in accordance with Ohio federal and state precedent, we find Ayers's claim of indemnification against the City fails as a matter of law. Accordingly, we find the trial court erred in granting summary judgment in favor of Ayers.
 

 {¶ 44} Our holding, however, does not resolve Ayers's case entirely. While Ayers does not have standing to enforce the City's obligations under R.C. 2744.07(A)(2), his remaining claims for tortious interference, breach of contract, aiding and abetting, abuse of process, unjust enrichment, specific performance, and civil conspiracy are no longer rendered moot and must be
 resolved. On remand, the trial court shall address Ayers's remaining causes of action to determine whether the defendants' actions following Ayers's jury award, including the City's failure to comply with the R.C. 2744.07(A)(2) and the circumstances surrounding Kovach's bankruptcy proceedings, subjected the City or defendants Scott and Leneghan to civil liability.
 

 {¶ 45} We recognize that Ayers and the City have conflicting interpretations of the CBA and "the total amount of indemnification the City is obligated to pay on behalf of one or more officer defendants."
 
 [5]
 
 However, a legal interpretation of the indemnification rights and responsibilities under the CBA is not currently before this court. Nevertheless, we reference the disagreement concerning the amount the City was required to indemnify Kovach only to highlight the apparent conflict of interests in having the City represent Kovach following the civil judgment. Given the City's interpretation of the CBA and their interest in indemnifying Kovach for the minimum amount required under the CBA, it is unclear whether the City's representation of Kovach was intended to protect its own best interests, or the personal interests of its employee. In our view, these circumstances relate directly to the actions of the City and the representations made to Kovach prior to the bankruptcy proceedings, and resolution of these issues will ultimately shed light on Kovach's motivation to forego her rights under R.C. 2744.07(A)(2) and pursue personal bankruptcy.
 

 {¶ 46} We further note that the conclusions reached by this court regarding the City's failure to comply with R.C. 2744.07(A)(2), and perhaps future judgments on Ayers's remaining causes of action, may have implications in Kovach's bankruptcy case. While the bankruptcy court did not have the authority to "to effectively provide an assignment of Kovach's statutory indemnification rights to Ayers" as the dissent suggests, the court has demonstrated a willingness to modify the discharge injunction if deemed necessary. Upon review of the bankruptcy materials attached to the parties' motions for summary judgment, it is evident that while Ayers was listed as a creditor in the petition documents, Kovach's right to indemnification was not referenced. Thus, it is unclear from this record whether the bankruptcy court was aware of Kovach's right to indemnification and, if it was not, whether the City's obligation under the statute would have altered the bankruptcy court's decision to grant Kovach a discharge. We reiterate that Kovach, unlike Ayers, is an intended beneficiary of R.C. 2744.07(A)(2) and she is entitled to enforce
 the City's obligations under both the statute and the CBA.
 

 {¶ 47} With respect to the dissent's concerns with the implications this opinion may have on the City's future dealings with its employees, we emphasize that our resolution of this appeal relies solely on our interpretation of R.C. 2744.07(A)(2). It is not an endorsement of the City's actions in this matter. To the contrary, the City's post-judgment involvement in the detectives' representation appears to be, as characterized by Ayers, "unprecedented." However, this court must remain cognizant that while the City's actions may appear unsettling on the surface, allegations pertaining to the legality of the City's post-judgment conduct has yet to be resolved by a trier of fact. At this point, Ayers and the City have not been afforded the opportunity to develop the facts through litigation, and conclusory statements concerning the interaction between the City and the officers between the civil judgment and the bankruptcy proceedings are premature at this time. We have no information regarding the detective's intentions or participation in the post-judgment legal maneuvers, or whether the Cleveland Police Patrolmen's Association had any knowledge of the City's recommendation to the detectives to enter bankruptcy in lieu of enforcing their indemnification rights. Similarly, it is equally unclear whether the City zealously represented its employees or merely protected its own interests.
 

 {¶ 48} The dissent's concerns with the City's conduct are justified. However, it is this court's hope that this decision will avoid future analogous fact patterns in this county by strongly reiterating to employees of political subdivisions that, subject to restricting contractual language, they have the absolute right to be held harmless for judgments rendered against them under R.C. 2744.07(A)(2), regardless of the representations made to them by the political subdivision. Moreover, if the developed facts of this case demonstrate, as the dissent concludes, that the City perpetrated an "undisclosed conflict of interest," "engaged in practices" that are against public policy, or illegally "orchestrated a scheme" to deprive Ayers of the judgment, the City will be held accountable for their conduct upon resolution of Ayers's remaining claims.
 

 {¶ 49} Based on the foregoing, we find R.C. 2744.07(A)(2) does not provide Ayers with standing to initiate a private cause of action against the City. The City's sole assignment of error is sustained. Having determined Ayers is not entitled to enforce R.C. 2744.07(A)(2) against the City, Ayers's first and second cross-assignments of error are rendered moot.
 

 {¶ 50} Judgment reversed and remanded.
 

 FRANK D. CELEBREZZE, JR., J., CONCURS;
 

 MARY EILEEN KILBANE, P.J., DISSENTS WITH SEPARATE OPINION
 

 For underlying facts,
 
 see
 

 Ayers v. Cleveland
 
 , N.D.Ohio No. 1:12-CV-753,
 
 2013 WL 775359
 
 , at *1-4 (Feb. 25, 2013).
 

 The judgment against the detectives was affirmed by the Sixth Circuit on December 2, 2014.
 
 Ayers v. Cleveland
 
 ,
 
 773 F.3d 161
 
 (6th Cir.2014).
 

 It is unclear from this record if Ayers, as a creditor, presented a claim in the probate court against Cipo's estate following his death.
 

 Ultimately, the
 
 Memphis
 
 court rejected the city's argument that the fireman-employee was required to satisfy the judgment rendered against him as a condition precedent to indemnity by the city.
 

 The City contends that the CBA places a $1,000,000 cap of the City's statutory obligations. In support of its position, the City cites paragraph 66 of the CBA, which provides:
 

 The total amount of indemnification to which the City is obligated to pay on behalf of one or more officer defendants or potential defendants arising out of a transaction or occurrence, which is the subject matter of allegations against the officers and/or co-defendants, shall be limited to the lower of either One Million Dollars ($1,000,000.00), or the amount of any deductible, self-insured retention, or uninsured primary level, under any policy of insurance paid by the City which provides coverage for the transaction or occurrence.
 

 In opposing the City's interpretation, Ayers cites Paragraph 68 of the CBA, which provides that the CBA's provisions regarding the Legal Representation of Officers "shall not be construed in any way to impair, alter, limit, modify, abrogate, or restrict any * * * benefit provided by law to the * * * officer." Ayers argues that the unequivocal language set forth under Paragraph 68 reflects the signatories' agreement that the CBA does not govern or restrict a defendant-officer's right to be held harmless "
 
 in the amount of any judgment
 
 " pursuant to R.C. 2744.04(A)(2). (Emphasis added.)