[Cite as *Burhill Leasing Corp. v. Graham*, 2022-Ohio-3757.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| BURHILL LEASING CORP. | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29401 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-357 |
| | : | |
| JEFFERY T. GRAHAM | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of October, 2022.

. . . . . . . . . . .

JEFFREY H. JORDAN, Atty. Reg. No. 0047296, P.O. Box 30863, Gahanna, Ohio 43230
    Attorney for Plaintiff-Appellant

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Burhill Leasing Corp. ("Burhill") appeals from the order of the trial court overruling its motion for summary judgment. Burhill obtained a default judgment against Michael Perry in a separate matter and subsequently obtained an order of garnishment against Jeffery Graham. Burhill then sought to enforce the garnishment against Graham pursuant to R.C. 2761.21(F), based upon a settlement agreement executed by Perry and Graham in which Graham agreed to indemnify Perry. The trial court properly denied Burhill's motion for summary judgment, since Burhill failed to establish that Graham, as garnishee, held property in his possession belonging to Perry and subject to garnishment. We affirm the judgment of the trial court.

{¶ 2} On January 29, 2021, Burhill filed its complaint against Graham. The complaint alleged that Burhill had obtained a judgment against Perry and others in Montgomery C.P. No. 2017-CV-5779, that Graham had a contractual duty to indemnify Perry "from the debt to [Burhill] which was the subject matter of" that case, and that Burhill had obtained a valid garnishment order against Graham. On February 3, 2020, Graham filed a "no money" response to the garnishment. Burhill asserted that Graham's response was unsatisfactory and failed to comply with the order of the court to pay the money owed, deliver the property into court, or provide the bond authorized under R.C. 2716.21(B). Burhill further asserted that it had or would suffer damages "in the amount of up to $107,985.44," plus attorney fees, court costs, interest, and costs associated with the garnishment order, "less credit for a part payment from a debtor other than Michael Perry." Burhill requested that the court enter judgment in its favor against Graham

pursuant to R.C. 2716.21(F). A copy of the garnishment order was attached to the complaint. Graham filed an answer on February 11, 2021.

{¶ 3} On September 23, 2021, Burhill moved for summary judgment. Burhill asserted that it had obtained a money judgment against Med Mobile LLC, Bryce Bookmiller, and Perry in Case No. 2017-CV-5779. According to Burhill, Graham had "signed documents whereby he contractually obligated himself to indemnify * * * Perry from liability arising from * * * Perry's involvement with Med Mobile LLC," and Graham had "responded, unlawfully, to the garnishment by paying no money." Burhill argued that Graham's contractual obligation to indemnify Perry was subject to garnishment of property "other than personal earnings" and "Perry was (and still is) in a position to sue [Graham] to enforce that contractual obligation of indemnity." Burhill argued that a statutory civil action under R.C. 2716.21(F) was the appropriate procedural vehicle for enforcing the garnishment" in the Med Mobile case. Burhill asserted that Graham's response to the garnishment had "unlawfully violate[d] the terms" of his contracts with Perry and caused Burhill to suffer damages, namely the money that Graham should have but did not deposit in response to the garnishment order. Burhill asserted that Graham's response to the garnishment exposed him to "independent and direct liability" to it for the full amount of the uncollected judgment in the Med Mobile case.

{¶ 4} On September 23, 2021, Burhill also acknowledged Graham's filing of responses to requests for admissions, wherein Graham admitted that he had signed the settlement agreement and that Case No. 2017-CV-5779 had resulted or arose from "Perry's ownership or operation of Med Mobile LLC or from a contractual liability of Med

Mobile LLC to [Burhill]." Graham further admitted that he responded to the garnishment order by answering that no money was owed. Finally, on the same date, Burhill filed an affidavit of Irvin Moscowitz, the Chief Executive Officer of Burhill.

{¶ 5} Graham responded to Burhill's motion for summary judgment on November 4, 2021. In his response, Graham asserted that he had not been a party to Case No. 2017-CV-5779 and had not been aware of it. He argued that the notice of garnishment had asked him to identify "any money property, or credits, in his hands or under his control belonging to" judgment debtor Perry arising out of that case, and he had "truthfully answered 'none.' " Graham noted that Burhill had not challenged Graham's assertions that he had no such assets in the execution proceedings but chose instead to file this action against him nearly a year later.

{¶ 6} Regarding R.C. 2716.21(B), Graham asserted that the statute contained "no reference * * * to possible, but not yet established indemnity obligations or debts and/or whether [Graham] possesses any such obligation or has a defense to same." Regarding R.C. 2716.21(F), Graham asserted that there was no reference to indemnification or debt, but only to "money owed to the judgment debtor." Graham argued that Burhill had offered no evidence that, when he was served with the garnishment, Graham had any money or property in his control that he owed to Perry, and that his affidavit averring that "no such money or property was in his control or possession" created a "significant" issue of fact.

{¶ 7} Graham further asserted that Burhill had not cited any Ohio case law that supported its position, because there was none; he argued that his "alleged indemnity

obligation" was not recognized by the garnishment statutes, and Burhill could not have the statutes "construed to add language * * * to fit its purpose in the pending litigation."

{¶ 8} The background facts, as set forth in the statement of facts in Graham's answer, were as follows: Graham became a member of Med Mobile LLC in 2014 and held a nominal 10% interest as "only an outside investor, who loaned money to the organization." Med Mobile LLC provided transportation services for people who needed to go to the doctor or hospital. Graham asserted that, during 2014 and 2015, "dissension arose" among the members of Med Mobile, and litigation was initiated by then-member Perry, member Bryce Bookmiller, and Med Mobile itself, but not Graham. In June 2015, all of the then-members of Med Mobile, including Graham, met at Med Mobile's lawyer's office and entered into a settlement agreement and release of claims, which resulted in Perry's removal as a member of Med Mobile. Graham noted that he was not represented by counsel at that time.

{¶ 9} Graham further asserted that Med Mobile ceased operations in 2017, and then Burhill, a vendor for Med Mobile, sued Med Mobile, Perry, and Bookmiller (but not Graham) in Case No. 2017-CV-5779,. Burhill had entered into certain vehicle leasing agreements with Med Mobile, which had been personally guaranteed by members Perry and Bookmiller. According to Graham, he was not named in this litigation and had not personally guaranteed any of the leasing transactions. Burhill obtained a civil judgment against Med Mobile, Perry, and Bookmiller in the amount of $108,871.38. Graham did not learn of the 2017 litigation until he was served with the garnishment at issue herein. Graham asserted that at no time during his involvement with Med Mobile had he had any

money, property, or credits belonging to Perry or received any cash or other distributions from Med Mobile, including at the time the business ended.

{¶ 10} Graham argued that, at its core, Burhill's legal argument was that, in a document to which Burhill was not a party, Graham and other members of Med Mobile had agreed to reimburse Perry for any losses Perry incurred after the date of this agreement for any claim to which the indemnity related. However, Graham asserted that there had never been a written demand and presentment by Perry to Graham for any loss incurred by Perry; thus, to the extent that the indemnification was valid, "the obligation [ran] to Michael Perry and not [Burhill]." Graham noted that Perry and Bookmiller "had previously executed guarantees of certain indebtedness of Med Mobile allegedly owed to [Burhill]," but Graham had not executed any such guarantee.

{¶ 11} Graham argued that Perry "could not successfully independently sue" Graham and recover a judgment against him, because Perry had not sustained a "loss" or presented a written demand. He argued that if Perry were to pursue such an action, Graham would be able to assert numerous defenses to the claim and have a court determine whether the indemnification clause could be invoked against him. Graham claimed that, because Case No. 2017-CV-5779 was resolved via default judgments, the validity of Burhill's claims has not yet been tested.

{¶ 12} With respect to the Burhill leasing agreements, Graham asserted that Perry had been primarily liable because he had executed personal guarantees, but Graham had not executed any personal guarantees. According to Graham, there must be a valid agreement between Perry and Graham in order for a third person (Burhill), for whose

benefit the promise was allegedly made, to sue on it, and it would be problematic for a court to interpret R.C. 2716.21(F) to require a garnishee to pay funds to a third party without having the right to dispute and litigate the enforceability of any indemnity agreement upon which such an obligation was based. He asserts that, if "the Ohio legislature intended the result for which [Burhill] advocates it should have provided for same in the statute." Graham asserted that he disputes "whether the alleged indemnity agreement constitutes 'property' subject to the garnishment process," and that he "would be denied due process if the court 'assumed' the indemnity obligation was binding on [him]."

{¶ 13} Graham's attached affidavit provided in part as follows:

* * *

4. As a result of the Settlement Agreement, Michael E. Perry was removed as a member of the LLC. After the Agreement was executed, additional problems arose with Mr. Perry, which could provide defenses to any claims he may possess against me.

5. Subsequently, in 2017 Med Mobile LLC ceased business operations. I was advised by Bryce Bookmiller that he had decided to shut down operations. During the time of my involvement with Med Mobile LLC I never received any funds. All I did was loan the organization money. I received no cash or property after the business was closed.

{¶ 14} Burhill filed a reply on November 11, 2021, in which it asserted there were no genuine issues of material fact. According to Burhill, Graham had waived several of

his defenses by raising them for the first time in response to the summary judgment motion, and all of Graham's legal arguments "lack substantive merit." Burhill argued that a "claim for breach of a contractual obligation to indemnify the claimant is 'property' subject to a garnishment order" and that "*all* of the judgment debtor's property, *of whatever nature*, is subject to the payment of his debts, unless there is some express statutory exemption." (Emphasis sic.) Burhill asserted that Graham made no argument to support his contention that the indemnity language was unenforceable.

{¶ 15} Burhill further argued that Graham's "unpled conditions" were inapplicable to his contractual obligation to indemnify Perry and that it (Burhill) had not been required "to provide notice or demand as a condition precedent to the indemnity." According to Burhill, Graham acknowledged that he had "participated" in negotiation and execution of the agreements that resolved the business dispute between Med Mobile, Bookmiller and Perry, and that he was also an investor and member of Med Mobile. Burhill asserted that, as such, Graham "had every reason and opportunity to know of the pendency of the Med Mobile Case," and Graham's "purported lack of awareness" of Med Mobile's business affairs was not evidence that Perry "had *peculiar* or unique or exclusive knowledge of it"; Med Mobile and Bookmiller knew all about it, too.

{¶ 16} Burhill asserted that "actual loss or payment by the indemnitee is not a condition precedent to the indemnitor's obligation to indemnify. Rather, the indemnitor's obligation to indemnify the indemnitee is fully due when a court determines the indemnitee liable on the underlying claim, demand, or action." Burhill argued that Graham concedes that Burhill "held (and still holds) an uncollected money judgment" against Perry at the

time of the garnishment.

{¶ 17} On December 2, 2021, Burhill filed a request to cite further legal authority in support of its motion for summary judgment, namely *Pliable Veneers, Inc. v. Omni Store Fixtures Corp.*, 6th Dist. Lucas No. L-96-145, 1997 WL 276214 (May 23, 1997).

{¶ 18} The court's decision on Burhill's motion for summary judgment states that oral argument occurred on December 14, 2021; however, no transcript of that hearing is part of the record on appeal.

{¶ 19} In its decision overruling Burhill's motion for summary judgment, the trial court observed:

During oral argument in this case, Burhill argued it was entitled to garnish Perry's indemnification right it alleged was "property" held by Graham. This Court expressed during oral argument, and continues to struggle with two issues with Burhill's position: (1) the Ohio garnishment statute and cases discuss an amount of money or property held and identifiable by the garnishee and belonging to the judgment debtor, a situation that does not exist here; and (2) that Burhill has missed a step between obtaining a default judgment against Perry, and having this Court order Graham to pay that judgment based on the indemnity language in a Settlement Agreement that has never been adjudicated. One thing the parties (and this Court) do agree on is there is no Ohio case law directly governing this situation, making this a case of first impression.

{¶ 20} The court further determined as follows:

Here, we are not dealing with the garnishment of a bank account or an insurance claim where there is an identifiable (or soon to be identifiable) amount of money being held strictly for the benefit of the judgment debtor. The Supreme Court *has* held a judgment debtor's "contractual right" to the money in the garnishee's possession is actually what is subject to garnishment, and we do have a contractual right to indemnification alleged here. However, there is no specific pot of money associated with that contractual right. Contrary to [*Mascon Equip. & Supply Co. v. Ohio Farmers Ins. Co.,* 5th Dist. Stark No. 2006CA00066, 2006-Ohio-5408], Perry does not have authority or control over any funds in Graham's possession. And distinguishable from *Pliable* [6th Dist. Lucas No. L-96-145, 1997 WL 276214], Graham is not holding money specifically belonging to Perry.

As discussed above, garnishment law is permeated with references to the ability of a garnishee to identify the amount of money being held for the judgment debtor. Here, Graham was asked to disclose the amount of "money, property, or credits" that he has in his possession belonging to Perry. Graham is not holding an identifiable amount of "money, property, or credits" belonging to Perry. Burhill would argue the identifiable amount is the amount of its judgment against Perry. However, that amount is identifiable by the *garnishor*, not the *garnishee*. This distinction is significant in light of the Ohio cases discussing garnishment law, where

there is always either a readily identifiable amount of money held by the garnishee or an amount to be determined *by the garnishee* that belongs to the judgment debtor.

However, the question of whether an indemnity right can be garnished does not need to be decided here, as the contractual right sought to be garnished has not yet been adjudicated.

{¶ 21} The Court next examined indemnity law, reviewing *Melbourne v. Lawn Works,* Mich. App. Nos. 263783, 263819, 2007 WL 675395 (March 6, 2007), and *Hudson v. Coleman*, 347 F.3d 138 (6th Cir. 2003). The court concluded:

As discussed above, Burhill argues that Perry has a contractual right to indemnification from Graham in certain situations outlined in the June 2015 Settlement Agreement. If Perry were to demand indemnification, or sue Graham for indemnification, Graham would have the right and opportunity to defend that claim. Whether Graham has any defense to such a claim is unknown because he has not been afforded the opportunity to assert such defenses. Burhill has not sought adjudication of the indemnity agreement or even *judgment* against Graham on the indemnity provision. Rather, it has requested:

a) An *order* of payment of the amounts outlined in paragraph 8 above [the default judgment amount];

b) An *order* of payment of the costs incurred herein. . . .

(emphasis added). Burhill has skipped the important step of having a court

declare the validity and enforceability of the indemnification clause, and then seeking to obtain a judgment against Graham, both steps permitting Graham to present a defense, if one exists. As a result, this Court must, at this stage, overrule Burhill's motion based on the only claim brought in this litigation pursuant to R.C. 2716.21(F).

(Emphasis and parentheticals sic.) Burhill appealed from this order.

{¶ 22} On March 7, 2022, this Court issued an order requiring Burhill to show cause why its appeal should not be dismissed for lack of jurisdiction because, generally, the denial of a motion for summary judgment is not a final, appealable order. Following Burhill's and Graham's responses, we issued a decision and entry allowing the appeal to proceed. We stated:

* * * Essential to the trial court's decision is its statement that [Burhill] "has skipped the important step of having a court declare the validity and enforceability" of the settlement agreement's indemnification clause. There is no factual dispute that [Burhill] has not satisfied this condition. Thus, there is no conceivable way for [Burhill] to obtain a judgment in its favor against [Graham] moving forward.

Accordingly, we concluded that the trial court denial of Burhill's motion for summary judgment "effectively prevent[ed] [Burhill] from recovering" against Graham and was a final appealable order pursuant to R.C. 2505.02(B)(2).

{¶ 23} Burhill asserts the following assignment of error:

THE TRIAL COURT ERRED, TO [BURHILL'S] PREJUDICE, BY

OVERRULING ITS MOTION FOR SUMMARY JUDGMENT OR OTHERWISE RULING THAT [BURHILL] HAS NO PATH FORWARD IN THIS CASE, EFFECTIVELY GRANTING SUMMARY JUDGMENT TO [GRAHAM].

{¶ 24} Burhill asserts that a lawsuit under R.C. 2716.21(F) is the correct procedural vehicle for a judgment creditor aggrieved by the garnishee's response to a garnishment order and that, because Graham is under contractual obligation to indemnify Perry from his debt to Burhill, Graham's " 'no money' response to the garnishment exposes Graham to independent and direct liability under the law to Burhill for the full amount of the uncollected judgment" in the Med Mobile case.

{¶ 25} According to Burhill, Graham's contractual obligation to indemnify Perry "is 'property' subject to garnishment of property other than personal earnings." Burhill acknowledges that, unlike a traditional garnishment of deposited money, in the context of a garnishment of property other than personal earnings, it is not the property itself which is subject to the garnishment but "*the judgment debtor's contractual right to receive* the 'property' from the garnishee." (Emphasis sic.)

{¶ 26} Burhill also argues that Graham's answer to the garnishment order "failed to comply" with that order and that, at the time of the garnishment, Perry "was (and still is) in a position to sue Graham to enforce that contractual obligation of indemnity." Burhill asserts the contract claim is property under Ohio law and directs our attention to *Pliable Veneers*, which it argues is "directly on point – Ohio appellate authority ruling specifically that a claim for contractual indemnity is 'property' subject to garnishment."

Burhill also directs our attention to several cases from other districts which he asserts support his position.

{¶ 27} Burhill asserts that the trial court's conclusion that Burhill may not bring a civil action against Graham under R.C. 2716.21(F) until after Graham's liability to Perry is fully litigated is contrary to Ohio law. Burhill argues that the trial court cited no legal authority to support this interpretation of R.C. 2716.21(F). According to Burhill, the "correct interpretation" of R.C. 2716.21(F) is that, if litigation of the existence or extent of the garnishee's liability to the underlying debtor is necessary, then those matters may be determined as part of the R.C. 2716.21(F) civil action.

{¶ 28} Burhill argues that the statutory language supports his interpretation because R.C. 2716.21(F) states that "proceedings may be had as in other civil actions," which "[p]resumably * * * indicates that the parties [must] follow the Civil Rules," which would allow the garnishee to file an answer asserting defenses to liability to the underlying debtor and to employ other processes, like discovery, to flesh out the disputed issues. Burhill also notes that R.C. 2716.21(E), "the contempt option, provides for a 'special examination of the garnishee' at which, again, the garnishee may assert defenses to the garnishee's liability to the underlying debtor." Burhill asserts that the statutory language is "not inconsistent with the notion of litigating the garnishee's liability to the underlying debtor" as part of R.C. 2716.21(E) contempt proceedings or an R.C. 2716.21 civil action.

{¶ 29} Burhill directs our attention to *Januzzi v. Hickman*, 61 Ohio St.3d 40, 572 N.E.2d 642 (1991) in support of his argument that litigation of the garnishee's liability to the underlying debtor can be part of an R.C. 2716.21(F) civil action. Burhill asserts that

counsel for Graham understood these issues could be litigated as part of Burhill's case because counsel noted, in opposing summary judgment, that Perry had not given Graham notice of Burhill's underlying claim against Perry or demanded indemnity from him and because counsel asserted " 'valid defenses' " to Graham's obligation to indemnify Perry.

{¶ 30} Burhill takes issue with the trial court's conclusion that the property subject to garnishment must be a " 'specific pot of money associated with [a] contractual right' belonging to the judgment debtor," because a "specific pot of money" did not exist in *Pliable Veneers,* 6th Dist. Lucas No. L-96-145, 1997 WL 276214.   Burhill argues that the trial court's theory ignored case law holding that property subject to garnishment need not be a specific or particular item or fund and that "what is garnished is *the judgment debtor's right to sue* the garnishee – whether that judgment debtor's claim sounds in replevin, breach of contract or otherwise."

{¶ 31} Graham responds that there "were and are countless issues of fact" surrounding the effect and enforceability of the indemnification agreement upon which the motion for summary judgment was based, including whether Burhill could proceed under R.C. 2716.21(F).   Graham asserts that the only way for Burhill to prevail on appeal would be for this Court to determine "that Ohio law does not require an initial determination that any alleged indemnity obligation was valid and enforceable" against Graham or a determination of the validity of Graham's legal defenses to such a claim.

{¶ 32} Graham argues that R.C. 2716.21(F) is not the "appropriate procedural vehicle" for Burhill to use in this case, because Graham's contractual obligation to indemnify Perry is not "property" subject to garnishment of property other than personal

obligations for purposes of R.C. 2716.21(F). He argues that there is no language in R.C. 2716.21(F) that refers to a right based on an indemnification agreement between the judgment debtor and a third party. "The only language stated is 'pay the money' and/or 'deliver the property.' A possible right to indemnification is clearly not property that can be delivered to the Court."

{¶ 33} Graham argues that money owed or property belonging to a judgment debtor refers to items then in existence; a potential right to indemnification that has not been perfected still requires a demand and presentment for indemnification, which Perry did not make, and Perry had not yet sustained a financial loss. Graham argues that if demand and presentment for indemnification had occurred, he would have been entitled to present defenses to the demand for indemnification, including potential breaches of the entire agreement by the judgment debtor and/or defenses to the amount allegedly owed. Graham asserts that, with respect to the Burhill leasing agreements, Perry was primarily liable because he had executed personal guarantees on behalf of Med Mobile, but Graham had no such involvement and did not execute any personal guarantees.

{¶ 34} Graham asserts that there is no reported Ohio case law that provided a remedy to Burhill under R.C. 2716.21(F) and that the cases cited by Burhill are "not analogous" to the facts in this case; those cases involved garnishee's who had been aware of and had participated in prior legal actions involving the debt at issue, or they involved insurance contacts.

{¶ 35} Citing *Ayers v. City of Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047, 156 N.E.3d 848, Graham asserts that indemnification is a personal right of Perry's that may

not be enforced by a third party. Graham argues that he had no obligation to pay Burhill on its leasing agreements because he did not personally guarantee them, and there is no evidence in the record establishing his (Graham's) liability under the indemnification agreement. Graham asserts that there were other remedies Burhill could have pursued against him, beginning in 2017, such as a creditor's bill under R.C. 2333.01, "but it has chosen a remedy not available to it" under R.C. 2716.21(F).

{¶ 36} In reply, Burhill notes that the complaint alleged that Graham owed a contractual duty to indemnify Perry and attached the agreements signed by Graham. Burhill asserts that it "conducted written discovery specifically concerning the indemnity agreements and Graham's liability" to Perry and that the "result of that discovery" was "undisputed proof of all elements of Graham's contractual obligation to indemnify [Perry]." Burhill asserts that Graham had adequate notice of his liability to Perry, and "if the point of Graham's arguments is that he lacked notice of the issue or opportunity to defend against it, the record indicates otherwise."

{¶ 37} Burhill asserts that Graham's defenses in his answer had been were waived and/or failed on their merits. According to Burhill, even if Perry never "presented the indemnity agreements or asserted his liability to Burhill or explicitly demanded indemnity," Ohio law did not support these as defenses. Burhill also refutes Craham's claim that he could have pursued a creditor's bill, as that instrument "is used to attach a judgment debtor's *equitable* interest in property," whereas a judgment debtor's *legal* interest in property (such as Burhill's) is subject to attachment by garnishment.

{¶ 38} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when

that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, 166 N.E.3d 725, ¶ 22 (2d Dist.); *Martcheva v. Dayton Bd. of Edn.,* 2021-Ohio-3524, 179 N.E.3d 687, ¶ 33-35 (2d Dist.).

**{¶ 39}** "The burden of demonstrating that no genuine issues exist as to any material fact falls upon the moving party requesting a summary judgment."  *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).   Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial.   *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must provide evidence setting forth specific facts showing that there is a genuine issue of material fact for trial.   Civ.R. 56(E).   *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, 167 N.E.3d 1095, ¶ 14 (2d Dist.).   When the standard is met, summary judgment must be awarded as a matter of law. *Martcheva* at ¶ 34.

**{¶ 40}** We review the trial court's ruling on a summary judgment motion de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42.

**{¶ 41}** The "Settlement Agreement and Mutual Release of Claims" executed by Perry, Bryce Bookmiller, Roy Bookmiller, and Med Mobile on June 12, 2015, states:

7.   **Indemnification**

(a)   The Company, Bryce A. Bookmiller, Roy Bookmiller, and Jeff

Graham, jointly and severally, covenant and agree to defend, indemnify and hold harmless Michel E. Perry from and against, and pay or reimburse Michael E. Perry for, any and all claims, demands, losses, damages, liabilities, strict liabilities, obligations, fines, costs and expenses (including interest and penalties with respect thereto and reasonable attorney fees, out-of-pocket expenses and costs of investigation), or other damages (whether absolute, accrued, conditional or otherwise and whether or not resulting from third party claims), fixed or contingent, liquidated or unliquidated, matured or unmatured (collectively, "Losses"), and all demands, assessments, judgments resulting from or arising out of the following (collectively, "Claims"):

(i) The ownership or operation of the Company prior to June 15, 2015;

(ii) The ownership or operation of the Company following the date of this Agreement;

(iii) Any debt, tax, liability or contractual obligation of the Company;

* * *

[(v)] All actions, suits, proceedings, demands, assessments or judgments (including all reasonable attorney fees and expenses) incident to any of the foregoing.

(b) The company, Bryce Bookmiller and Jeff Graham, jointly and severally, agree to reimburse Michael E. Perry, upon demand and

presentment of written verification, for any Losses incurred by Michael Perry at any time after the date of this Agreement with respect to any Claims to which the foregoing indemnity relates.

{¶ 42} The affidavit section of the garnishment states that the "person or entity named as garnishee in Section A below may have in the garnishee's hands or control money, property, or credits, other than personal earnings, of the judgment debtor." It provides: "Such property is described as follows: Money owed to Michael E. Perry in the form of contractual obligation to indemnify Michael E. Perry from liability for debts of Med Mobile, LLC."

{¶ 43} "Garnishment is a procedure whereby a creditor can obtain property of its debtor which is in the possession of a third party. R.C. 2716 authorizes the commencement of garnishment by a judgment creditor when supported by an affidavit * * *." *City of East Liverpool v. Buckeye Water Dist.*, 2012-Ohio-2821, 972 N.E.2d 1090, ¶ 36 (7th Dist.). A garnishee is defined as "* * * one who has money or property in his possession belonging to a defendant, or who owes the defendant a debt, which money, property, or debt is attached." *Hoffman v. Gable*, 3d Dist. Henry No. 7-90-10, 1991 WL 260118, *6 (Dec. 9, 1991).

{¶ 44} R.C. 2761.21 governs the answer of the garnishee to a garnishment, payment to the court, failure to comply, and remedies, as follows:

(B) After the order of garnishment is served on a garnishee, as provided in section 2716.05 or 2716.13 of the Revised Code, the garnishee shall return the answer to the court that issued the garnishment order within

five business days after receipt of the order if the order is served under section 2716.05 of the Revised Code or before the date set for the hearing as indicated on the order if the order is served under section 2716.13 of the Revised Code. The garnishee shall answer all questions addressed to the garnishee * * * regarding the amount of money, property, or credits, other than personal earnings, of the judgment debtor that are in the garnishee's possession or under the garnishee's control at the time of service of the order, whichever is applicable. The garnishee shall truly disclose the amount owed by the garnishee to the judgment debtor whether due or not * * *. If a garnishee answers and it is discovered that, at the time of the service of the order upon the garnishee, the garnishee possessed any money, property, or credits of the judgment debtor or was indebted to the judgment debtor, the court may order the payment of the amount owed into court, or it may permit the garnishee to retain the money, property, or credits or the amount owed upon the garnishee's executing to the judgment creditor a bond with sufficient surety to the effect that the amount will be paid as the court directs.

* * *

(D) A garnishee shall pay the personal earnings owed to the judgment debtor or the money or value of the property or credits, other than personal earnings, of the judgment debtor in the garnishee's possession or under the garnishee's control at the time of service of the order of

garnishment, or so much thereof as the court orders, into court. The garnishee shall be discharged from liability to the judgment debtor for money so paid and shall not be subjected to costs beyond those caused by the garnishee's resistance of the claims against the garnishee. A garnishee is liable to the judgment creditor for all money, property, and credits, other than personal earnings, of the judgment debtor in the garnishee's possession or under the garnishee's control or for all personal earnings due from the garnishee to the judgment debtor, whichever is applicable, at the time the garnishee is served with the order under section 2716.05 or 2716.13 of the Revised Code.

(E) If a garnishee fails to answer as required by this section, answers but fails to answer satisfactorily, or fails to comply with a proper order of a court in connection with a garnishment under this chapter, the court may proceed against the garnishee for contempt.

Upon the request of the judgment creditor, a special examination of a garnishee may be had by the judgment creditor if the garnishee fails to answer as required by this section, answers but fails to answer satisfactorily, or fails to comply with a proper order of a court in connection with the garnishment. * * *

(F)(1) If a garnishee fails to answer as required by this section, answers and the garnishee's answer is not satisfactory to the judgment creditor, or fails to comply with the order of the court to pay the money owed

or deliver the property into court or to give the bond authorized under division (B) of this section, the judgment creditor may proceed against the garnishee by civil action. Thereupon, proceedings may be had as in other civil actions. Judgment may be rendered in favor of the judgment creditor for the amount of money owed the judgment debtor in the garnishee's possession at the time the garnishee was served with the order of garnishment under section 2716.05 or 2716.13 of the Revised Code and, if it appears on the trial that the garnishee's answer was incomplete, for the costs of the proceedings against the garnishee. An action authorized under this division shall be brought in the county in which the garnishee resides.

(2) A garnishee who acts, or attempts to act, in accordance with Chapter 2716. of the Revised Code is not liable for damages in any civil action for any action taken pursuant to that chapter in good faith or any omission made in good faith.

{¶ 45} In *Januzzi v. Hickman,* 61 Ohio St.3d 40, 572 N.E.2d 642, the Supreme Court of Ohio noted:

Prior case law has unequivocally held that a garnishee is not a party to a garnishment proceeding. As stated in the second paragraph of the syllabus in *Secor v. Witter* (1883), 39 Ohio St. 218, "* * * a garnishee who is summoned to answer is not a party, nor has he had his day in court in that [garnishment] action. His duty is to appear and answer all questions

touching on the property and credits of defendant in his possession or under his control, and truly disclose the amount owing by him to defendant, whether due or not * * *."   The *Secor* court held that an order to pay into court merely assigned the defendant debtor's claim against the garnishee to the plaintiff creditor.   *See id.* at paragraph four of the syllabus.   It remained for the plaintiff to enforce the assigned claim against the garnishee in a separate civil action authorized by statute.

*Id.* at *42.   The court further observed that "since the separate civil action proceeds 'as in other civil actions,' R.C. 2716.21(F), the garnishee will have the full ability to raise viable defenses [to the order to pay into court] in that action."   *Id*. at *44.

{¶ 46}   In *Buckeye Water Dist.*, 2012-Ohio-2821, 972 N.E.2d 1090, ¶ 37, the Seventh District stated:

Property held by a third party is subject to garnishment to satisfy the debts of a judgment debtor when, at the time of the service of the garnishment order, the judgment debtor has a right or title to the property. * * * On the other hand, where the judgment debtor himself has no present right to obtain the money or property from the garnishee, then the judgment creditor likewise has no right to the property. * * * *Toledo Trust Co. v. Niedzwiecki,* 89 Ohio App.3d 754, 757, 627 N.E.2d 616 (6th Dist.1993).

{¶ 47} In *Pliable Veneers,* 6th Dist. Lucas No. L-96-145, 1997 WL 276214, a creditor's bill case, the Sixth District noted as follows:

In *Loveman v. Hamilton* (1981), 66 Ohio St.2d 183, 185, the Ohio

Supreme Court noted:

> "Personal property is not limited to tangible goods and chattels. Intangible choses in action, such as a contract right and the right to bring a cause of action in a court of law, are also considered personal property." (Citations omitted.) (Emphasis added).

> An insurance policy is a contract between the insurer and the insured. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109. Therefore, because Omni had an insurance contract with [United States Fidelity & Guaranty Co. ("USF & G")][1], and, thus, the right to bring a cause of action, this would be considered "personal property" subject to garnishment by * * * one of Omni's judgment creditors."

(Footnote added.) *Id.* at *4.

**{¶ 48}** As noted by the Seventh District in *Buckeye Water District*:

> The garnishor has the initial burden to prove that the property being garnished is the property of the judgment debtor. *Davis v. Sean M. Holley Agency, Inc.,* 2d Dist. No. 23891, 2010-Ohio-5278, ¶ 11.

> The judgment debtor may attempt to defeat the garnishment order by establishing an exemption or other defense to garnishment. "The burden of proof on the existence or applicability of an exemption or defense

---

[1] USF & G admitted that it "did have a liability to Omni in a yet undetermined amount." *Id.* at *1.

*rests with the judgment debtor.*" (Emphasis sic.) *Ashtabula Cty. Med. Ctr. [v. Douglass,* 11th Dist. Ashtabula No. 1331, 1988 WL 59836]*,* at *2, citing *Hoffman v. Weiland,* 64 Ohio App. 467, 29 N.E.2d 33 (1st Dist.1940). The judgment debtor may object to the attachment of the property and request a hearing. R.C. 2716.13(B). "The hearing is limited to the consideration of the amount of property of the judgment-debtor in the hands of the garnishee that can be used to satisfy all or part of the debt owed by the judgment-debtor to the judgment-creditor." *Marinik v. The Cascade Group,* 103 Ohio Misc.2d 18, 22, 724 N.E.2d 877 (M.C.1999).

Garnishment of bank accounts involves additional considerations not applicable to other types of personal property. "The relationship between a bank and its depositor is a debtor-creditor relationship. ' * * * [M]oney deposited in a bank becomes the property of the bank and is available for use by the bank in its business. The depositor becomes a creditor of the bank in the amount of the deposit with the right to have this debt repaid in whole or in part on demand,' 1 Natter, Schlichting, Rice & Cooper, Banking Law (1991) 9-19, Section 9.05, subject to the terms of the depositary agreement between the bank and the depositor, *Fourth & Central Trust Co. v. Rowe* (1930), 122 Ohio St. 1, 170 N.E. 439, paragraph two of the syllabus; *Gall v. Central Trust Co.* (1937), 57 Ohio App. 168, 25 Ohio Law Abs. 550, 10 O.O. 303, 12 N.E.2d 782. Thus, where the depositor is a judgment debtor and the bank is a garnishee, the property being garnished

is, strictly speaking, not the funds themselves, but the debtor's contractual right to receive them." *Goralsky v. Taylor,* 59 Ohio St.3d 197, 198, 571 N.E.2d 720 (1991).

* * *

The general test for whether a bank is required to release funds to the garnishor is whether or not the judgment debtor could sue the bank for release of the funds. *First Bank of Marietta v. Mascrete, Inc.,* 125 Ohio App.3d 257, 263, 708 N.E.2d 262 (4th Dist.1998); *Marquis* [*v. New York Life Ins. Co.*]*, supra,* 92 Ohio App. at 396, 108 N.E.2d 227.

*Buckeye Water Dist.* at ¶ 38-40, 42.

{¶ 49} In *Mascon Equip. & Supply Co., Inc. v. Ohio Farmers Ins. Co.,* 5th Dist. Stark No. 2006CA00066, 2006-Ohio-5408, ¶ 12, the Fifth District determined that the trial court had erred in permitting Mascon, a judgment creditor of Northern Valley, to satisfy a garnishment with funds belonging to a third party, Ohio Farmers Insurance Company ("Ohio Farmers"). Therein, Ohio Farmers, a surety, had objected to the garnishment sought by Mascon. After considering *Goralsky,* 59 Ohio St.3d 197, 571 N.E.2d 720, the Fifth District found:

The issue presented here, as opposed to many of the cases referencing garnishment of bank accounts, is not the obligations of the bank holding such funds to comply with the order of garnishment but whether the objection by a third party claiming a contractual right to such funds superseding any claims of the judgment debtor should or should not be

sustained.

This case also differs in that it involves the prior contractual obligation of [Ohio Farmers] under its bonds to complete the various projects of Northern Valley. Revised Code § 2716.01 specifically states that *the property of the debtor* may be reached by a judgment creditor. * * * Clearly, the property of a third party is not, under the statute, subject to garnishment. The facts remaining for determination in any case involving attempted garnishment of funds are whether a contractual relationship is established as to utilization and control of the funds in question.

Here, the court found the facts necessary to establish the purpose and source of the funds and the lack of authority of Northern Valley to expend such without approval of [Ohio Farmers], but misapplied the statute and case law in determining that, notwithstanding ownership [by a third party], the funds were reachable.

(Emphasis sic.) *Mascon* at ¶ 26-29.

**{¶ 50}** Regarding the garnishment of a right to indemnification, as the trial court noted, this is a case of first impression. "[I]ndemnification is a personal right rather than a right that may be enforced by a third party. *See Worth v. Aetna Cas. & Sur. Co.*, 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987)." *Ayers v. City of Cleveland*, 160 Ohio St.3d 288, 2020-Ohio-1047, ¶ 22. In *Worth*, the Ohio Supreme Court explained:

Indemnity arises from contract, either express or implied, an is the right of a person, who has been compelled to pay what another should have

paid, to require complete reimbursement. *Travelers Indemnity Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus. In general, to indemnify is to make whole and has been defined to mean to save harmless by giving security for the reimbursement of a person in case of anticipated loss, as by execution and delivery of a bond. See, generally, 41 American Jurisprudence 2d (1968) 687, Indemnity, Section 1.

*Worth* at 240.

{¶ 51} Garnishment allows a judgment creditor to obtain the property of its judgment debtor which is in a third party's possession. On this record, we cannot conclude that Burhill established that Graham had money or property in his possession that belonged to Perry for garnishment purposes. As the trial court noted, "Burhill has skipped the important step of having a court declare the validity and enforceability of the indemnification clause and then seeking to obtain a judgment against Graham." In his affidavit, Graham averred that, after the settlement agreement was executed, "additional problems arose" with Perry, "which could provide defenses to any claims" Perry had against Graham. Graham further averred that he never received any funds, but only loaned money to Med Mobile, and that he received no cash or property after the business was closed.

{¶ 52} As the trial court noted, this is not a type of garnishment case where a judgment creditor, based upon an insured's right to bring a cause of action against its insurer, may garnish the insurer after the insurer acknowledges a liability to its insured.

It is also not a standard bank garnishment, where a customer deposits a sum of money at a bank and has a contractual right to that identifiable sum that may be reached by a judgment creditor. Rather, the amount of Burhill's judgment against Perry "is identifiable by the *garnishor*, not the *garnishee.*" The trial court found this distinction "significant in light of the Ohio cases discussing garnishment law, where there is always either a readily identifiable amount of money held by the garnishee or an amount to be determined *by the garnishee* that belongs to the judgment debtor." We agree with this assessment. Burhill failed to meet its initial burden to prove that the property it sought to garnish was the property of the judgment debtor, Perry; as such, summary judgment in Burhill's favor was inappropriate.

{¶ 53} Regarding Burhill's assertion that it "holds a breach of contract claim against Graham," we further conclude that an R.C. 2716.21(F) proceeding is not the proper vehicle to prosecute an alleged claim for breach of contract. The purpose of the statutory proceeding was to allow Graham to fully litigate the validity of the order to pay into the court. Finally, as noted above, indemnification pursuant to the settlement agreement is a personal right belonging to Perry, not Burhill.

{¶ 54} Based upon the foregoing, Burhill's assigned error is overruled.

{¶ 55} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., concurs.

TUCKER, P.J., concurs:

{¶ 56} Though I concur in the majority opinion, I write separately to state the precise basis upon which I reach this conclusion.

{¶ 57} The trial court's summary judgment decision states that "the question of whether an indemnity right can be garnished need not be decided." But, in my opinion, this threshold issue is resolved against Burhill, making further analysis unnecessary.

{¶ 58} I come to this conclusion based upon *Ayers v. City of Cleveland,* 160 Ohio St.3d 288, 2020-Ohio-1047, which stands for the proposition that a third-party judgment creditor cannot pursue a cause of action against a judgment debtor's indemnitor. *Id.* at ¶ 22-23. This is so because "indemnification is a personal right rather than a right that may be enforced by a third party." *Id.* at ¶ 22, citing *Worth,* 32 Ohio St.3d 238, 240, 513 N.E.2d 253. The rationale for this conclusion is that "indemnification exists to 'make whole' the person who is indemnified[,]" which means, "in other words, [that] indemnification does not exist to benefit a third party." *Ayers* at ¶ 23, quoting *Worth* at 240.

{¶ 59} Of course, a garnishment proceeding is not a direct cause of action against an indemnitor, but it defies logic to conclude that through a garnishment proceeding, a third-party judgment creditor may accomplish indirectly that which he may not accomplish directly. Thus, I conclude that an indemnity right cannot be garnished. Upon this basis, I concur in the majority opinion.


Copies sent to:

Jeffrey H. Jordan

David M. Duwel
Hon. Susan D. Solle